UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

1-19-05

| | |
|---|---|
| SHLOMI COHEN,  ISRAEL MANELA, and ELI ) MORE, individually and on behalf of all others ) similarly situated, ) | Case No. 05-338 (KSH) |
| ) | |
| ) | **CLASS ACTION COMPLAINT** |
| Plaintiffs, ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | |
| HAIM AVIV; GAD RIESENFELD; and PHARMOS ) CORP., ) | |
| ) | |
| Defendants. ) | |

Plaintiffs, by undersigned counsel, for plaintiffs' Class Action Complaint, allege the

following upon personal knowledge as to plaintiffs and plaintiffs' own acts, and upon information

and belief based upon the investigation of plaintiffs' attorneys as to all other matters.   The

investigation includes the review and analysis of public statements and publicly-filed documents of

Pharmos Corp. ("Pharmos" or the "Company"), press releases, news articles and related literature.

Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth

below after a reasonable opportunity for discovery.

## SUMMARY OF ACTION

1.     This is a securities class action on behalf of investors who purchased common

stock of the Pharmos during the period from August 23, 2004  through December 17, 2004 (the

"Class Period").

2.      Pharmos is a bio-pharmaceutical company that develops drugs to treat a range of neuro-inflammatory disorders. Pharmos's main product, Dexanabinol, is a synthetic non-psychotropic cannabinoid for the treatment of traumatic brain injury.

3.      Pharmos's common stock is listed on the Nasdaq under the ticker symbol "PARS"; and as of November 1, 2004, Pharmos had 94.3 million shares outstanding.

4.      Throughout the Class Period, defendants repeatedly touted Dexanabinol, causing Pharmos' stock price to climb dramatically. In fact, Dexanabinol was simply ineffective in treating Traumatic Brain Injury, and defendants were aware of or recklessly disregarded evidence of that ineffectiveness.

5.      Defendants took advantage of the inflated stock price to sell millions of dollars of Pharmos stock to investors and the August 2004 private placement.

6.      Moreover, between November 15, 2004 to December 1, 2004, more than six months after enrollment in Phase III trials was completed, Pharmos Chairman Haim Aviv and President/COO Gad Riesenfeld, together sold more than 400,000 shares of Pharmos for proceeds of more than $1.6 million.

7.      On the morning of December 20, 2004, defendants issued a press release announcing results from its pivotal Phase III trial of Dexanabinol for Severe Traumatic Brain Injury. According to the announcement, Dexanabinol, did not show a neuroprotective effect in a comprehensive study of 861 patients that had begun more than a year.

8.      In reaction to the news on December 20, 2004, shares of Pharmos fell from $3.50 to $1.18 (a 66% decline). Analysts at Harris Nesbitt, Ferris Baker Watts, Rodeman & Renshaw and RBC Capital all reduced their investment ratings for Pharmos. Through their timely-placed sales,

2

defendants Aviv and Riesenfeld obtained more than $1.1 million in proceeds that they would not have obtained had they waited until after the December 20 announcement to sell.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "1934 Act"), 28 U.S.C. §§ 1331 and 1337. The claims asserted herein arise under, Sections 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b), 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the SEC.

10.     Venue is properly laid in this Judicial District pursuant to Section 27 of the Exchange Act because many of the principal acts and injuries alleged herein occurred in substantial part in this district.  Such acts included practices and conduct violative of the Exchange Act, including the preparation, issuance of and dissemination of materially false and misleading documents and information to the investing public. In addition, Pharmos maintains its corporate headquarters in this District in, Iselin, New Jersey.

11.     In connection with the wrongs alleged herein, defendants used the instrumentalities of interstate commerce, including the United States mails, interstate wire and telephone facilities, and the facilities of the national securities markets.

## THE PARTIES

12.     Plaintiffs purchased Pharmos common stock during the Class Period and were damaged thereby, as set forth in the Certifications filed with this Complaint.

13.     Defendant Pharmos is incorporated in Nevada and headquartered in Iselin, New Jersey, with common stock trading on the Nasdaq under the ticker symbol "PARS".

3

14.     Defendant Haim Aviv is the Chairman, Chief Executive Officer as well as the Chief Scientist of Pharmos.

15.     Defendant Gad Riesenfeld is the President/COO of Pharmos.

16.     The individuals named in ¶¶ 14 and 15 above are hereinafter collectively referred to as the "Individual Defendants".

17.     By virtue of their positions with the Company as senior officers and executives, the Individual Defendants had the authority and ability to and, in fact did, control the contents of the Company's annual and quarterly reports filed with the SEC and the contents of the Company's press releases. Further, the Individual Defendants' actions during the Class Period caused the material misstatement of the Company's business operations as alleged herein. The Individual Defendants were aware of the contents of the Company's publicly disseminated reports and press releases alleged herein to be misleading prior to their issuance and had the ability and opportunity to prevent their issuance, but failed to do so.

### CLASS ACTION ALLEGATIONS

18.     Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of all other persons or entities who purchased or acquired Pharmos securities during the Class Period and were damaged thereby, excluding the defendants herein, their affiliates and any officers or directors of Pharmos or its affiliates, and any members of their immediate families and their heirs, successors and assigns (the "Class").

19.     The Class is so numerous that joinder of all the members of the Class is impracticable.

4

20.     Plaintiffs' claims are typical of the claims of absent Class members. Members of the Class have sustained damages arising out of defendants' wrongful conduct in violation of the federal securities laws in the same way as the plaintiffs sustained damages from the unlawful conduct.

21.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in class and securities litigation.

22.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Class is numerous and geographically dispersed. It would be impracticable for each member of the Class to bring a separate action. The individual damages of any member of the Class may be relatively small when measured against the potential costs of bringing this action, and thus make the expense and burden of this litigation unjustifiable for individual actions. In this class action, the Court can determine the rights of all members of the Class with judicial economy. Plaintiffs do not anticipate any difficulty in the management of this suit as a class action.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. These questions include, but are not limited to, the following:

(1)     whether defendants' conduct as alleged herein violated the federal securities laws;

(2)     whether the SEC filings, press releases and statements disseminated to the investing public during the Class Period misrepresented Pharmos's operations;

5

(3)      whether defendants acted knowingly or recklessly in omitting and/or misrepresenting material facts;

(4)      whether the market price of Pharmos during the Class Period was artificially inflated; and

(5)      whether the members of the Class have been damaged, and if so, what is the proper measure of damages.

24.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. To the extent that the Complaint alleges that any forward-looking statements were materially misleading, defendants made no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements and, in fact, defendants had no reasonable basis for their forward looking statements.

## SUBSTANTIVE ALLEGATIONS

25.      Dexanabinol is a non-psychotropic cannabinoid NMDA receptor antagonist under development by Pharmos for the potential treatment of cerebral ischemia, glaucoma, Alzheimer's disease, cardiac failure, head injury and multiple sclerosis. Dexanabinol was licensed to Pharmos for development from its originator, the Hebrew University of Jerusalem.

26.      On March 16, 2004, shares of Pharmos rose as much as 6.5% after the Company said it completed patient enrollment for phase III clinical trials of dexanabinol. The day before the price reaction, the Company said in a PRNewswire statement:

6

"The clock is starting to tick to six months follow-up and then it will take two or three months to organize the data and know if we have a clinical effect... By the end of the year we expect to have the results."

        27.     On April 1, 2004, Pharmos issued a press release announcing that it has been awarded a grant of up to US $1.3 million by the Office of the Chief Scientist of Israel's Ministry of Industry and Trade to help fund the Company's development of dexanabinol.

> "We are pleased to be awarded this and previous funding from the Office of the Chief Scientist... The grant, which is in line with our expectations, is important confirmation of our work with dexanabinol," said Haim Aviv.

        28.     On August 12, 2004, Pharmos issued a press release, stating the following:

> Pharmos Corporation today announced the U.S. Food and Drug granted orphan drug designation to the Company's lead product candidate, dexanabinol, a neuroprotective agent that the Company is developing to treat severe traumatic brain injury. Dexanabinol is currently being tested in a pivotal Phase III trial for this indication. Results of the trial, which completed enrollment in March 2004, are expected to be announced at the end of this year.

> "We are pleased to be award orphan designation for dexanabinol to treat this serious condition for which there is no FDA-approved product," said Haim Aviv. "In addition to benefitting the regulatory submission process, orphan designation provides market exclusivity that adds one more layer of protection beyond our robust intellectual property position for dexanabinol in the treatment of severe TBI."

        29.     On August 23, 2004, the Company issued a press release regarding its stock offering:

> Pharmos Corporation announced today that it has raised $16.75 million gross proceeds in an issuance of common stock with several institutional investors. The proceeds will be used for general corporate purposes.

Haim Aviv said "This financing will allow us to more aggressively pursue our promising CB2 platform while maintaining focus on our top investment priority, Dexanabinol for Traumatic Brain Injury. We see this opportunity in the market as a means to solidify our cash reserves for growth and success."

30.     On October 26, 2004, after the completion of the Phase III trial for TBI and after the completion of the six month "follow up" period, Pharmos held a conference at the Waldorf Astoria in New York for analysts and large investors. At the conference, Aviv provided an update on the Company's business and product pipeline. In a power-point presentation, Aviv hyped the investment potential of Pharmos related to the Phase III for TBI, stating:

- Worldwide potential market exceeds $1 billion.
- Potentially the first FDA-approved product.
- Pharmos possesses worldwide product rights for Dexanabinol.
- Development program utilizes worldwide knowledge base of thought leaders.

31.     At the conference, Aviv was asked how many shares were held by Pharmos management. His response was "too little." As investors would learn later, Aviv and Riesenfeld were actually poised to unload millions of dollars of Pharmos shares in advance of the announcement of Phase III results.

32.     On November 22, 2004, Pharmos announced results of its Phase II Clinical Trial of Cognitive Impairment in Coronary Artery Bypass Graft Patients. Haim Aviv said "The results are encouraging, and we are pleased that the trial provides **supportive evidence of the neuroprotective effect of dexanabinol in the human brain**". While post-surgical cognitive impairment and traumatic brain injury ("TBI") are significant different indications, and may not extrapolate results from this trial to predict the outcome of Pharmos' pivotal Phase III trial in severe TBI, the pathology of the two indications involves neuroinflammation and other cytotoxic processes in the brain.

8

33.     In late November and early December 2004, shortly prior to the announcements of the Phase III trial results but after the completion of the six month "followup" period, and long after completion of the Phase III enrollment, both Haim Aviv and Gad Riesenfeld sold shares of Pharmos around end of November to the beginning of December. Aviv sold approximately 20% of his holdings (214,991 shares); and Gad Riesenfeld sold almost 50% of his holdings (205,138 shares), all at around $4 (for total proceeds of $1.6 million).

34.     In its 8K filed on the December 20, 2004, Pharmos announced the "top line results of its pivotal Phase III trial of dexanabinol to treat severe traumatic brain injury (TBI). Dexanabinol did not demonstrate efficacy as measured by the primary clinical outcome endpoint.."

35.     On December 20, 2004, during the announcement of the Phase III results, Pharmos' Chief Financial Officer Alon Michal said "We won't be making any additional investments in TBI." Pharmos spokeswoman Gale Smith said "This was our leading program, and it's very unlikely that we'll continue with dexanabinol for traumatic brain injury."

36.     In reaction to this news, shares of Pharmos plummeted from $3.50 to $1.18, a decline of 66% on the close of Nasdaq.

**Analyst Reactions, Reports and Analysis**
**to Defendants' December 20 Announcement**

37.     In the wake of the December 20 Phase III trial announcement, analysts at RBC Capital Markets, Ferris Baker Watts and Rodman & Renshaw all reduced their investment ratings for Pharmos to the equivalent of "underperform" or "sell".

38.     Ferris Baker Watts analyst Michael Zasloff, in his December 20, 2004 report titled *Pharmos Corp. Announces That Its Lead Drug Dexanabinol Failed to Exhibit Efficacy in a Pivotal Phase III Trial for Traumatic Brain Injury- Downgrade to Sell*– stated:

Pharmos reported the results of a Phase III study evaluating the efficacy of dexanabinol in traumatic brain injury. The study, involving over 800 patients, failed to provide evidence that dexanabinol was of benefit in preserving brain function following traumatic brain injury.

We remain perplexed over the failure of this trial in light of prior clinical studies...

39.    Rodman & Renshaw analysts Elemer Piros and Swayampakula Ramakanth,

in their December 20, 2004 report titled *Dexanabinol Is No Match for TBI: Downgrading to Market*

*Underperform/Speculative Risk*, stating:

Fought an uphill battle, but today, Pharmos reported negative Phase III trial results with dexanabinol for the treatment of severe traumatic brain injury (TBI). Recently, the same drug provided only partial benefit for patients with cognitive impairment (CI) following cardiac sugery. While Pharmos continues to develop dexanabinol for CI, we are unable to assign tangible value for the compound.... Therefore, we are downgrading Pharmos to Market Underperform/Speculative Risk and place our target price under review.

40.    In RBC Capital Markets' research report, analyst David Bouchey lowered

Pharmos' rating to Sector Perform from Outperform because of Dexanabinol's Phase III's failure:

The Dexanabinol Phase III showed no evidence of efficacy over-all or in any sub-group tested for the primary endpoint, improvement in outcomes as measured by the extended Glasgow Outcome Scale. Neither was there evidence for a mortality benefit. It is still possible the company could demonstrate an improvement in control of Intracranial Pressure (ICP).... However, it is likely that control of ICP is NOT an FDA approvable endpoint by itself.

**Scienter**

41.    **Insider selling shortly before the announcement of Phase III trial results**

**of Dexanabinol**: in the course of several days, individual defendants sold a large percentage of their

holdings few weeks prior to the announcement of the negative Phase III trial results.

10

42.     Haim Aviv and Gad Riesenfeld sold 420,1239 shares of Pharmos at artificially inflated prices for proceeds in exceed of $1.68 million. Haim Aviv sold 20% of his holdings and Riesenfeld sold 50% of his holdings. If they had waited until after the December 20, 2004 announcement to sell their shares, they would have received approximately $500,000, over $1 million less.

43.     The hype and positive comments on Dexanabinol also enabled the Defendants to raise millions of dollars through a private placement in August 2004.

## COUNT I

### VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

44.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein except for those allegations alleging fraud.

45.     At all relevant times, defendants, individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct whereby they knowingly and/or recklessly made and/or failed to correct public representations which were or had become materially false and misleading regarding Pharmos's operations and products.   This continuous course of conduct resulted in the defendants causing Pharmos to issue public statements which they knew, or were reckless in not knowing, were materially false and misleading, in order to artificially inflate the market price of Pharmos stock and which operated as a fraud and deceit upon the members of the Class.

11

46.     Defendants are liable as direct participants in the wrongs complained of herein. The Individual Defendants are liable as direct participants in and as a controlling persons of the wrongs complained of herein. By virtue of their positions of control and authority as officers and directors of Pharmos, the Individual Defendants were able to and did, directly or indirectly, control the content of the aforesaid statements relating to the Company, and/or the failure to correct those statements in timely fashion once they knew or became reckless in not knowing that those statements were no longer true or accurate. The Individual Defendants caused or controlled the preparation and/or issuance of public statements and the failure to correct such public statements containing misstatements and omissions of material facts as alleged herein.

47.     Defendants had actual knowledge of the facts making the material statements false and misleading, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though same were available to them.

48.     In ignorance of the adverse facts concerning Pharmos's business operations and statements, and in reliance on the integrity of the market, plaintiffs and members of the Class acquired Pharmos securities at artificially inflated prices and were damaged thereby.

49.     Had plaintiffs and the Class known of the materially adverse information not disclosed by the defendants, they would not have purchased Pharmos at all or not at the inflated prices paid.

50.     By virtue of the foregoing, defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

12

## COUNT II

### VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT AGAINST THE INDIVIDUAL DEFENDANTS

51.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein except for those alleging fraud.

52.     This count is asserted against the Individual Defendants and is based upon Section 20(a) of the 1934 Act.

53.     The Individual Defendants, by virtue of their offices, directorships, stock ownership and specific acts were, at the time of the wrongs alleged herein and as set forth in Count I, controlling persons of Pharmos within the meaning of Section 20(a) of the 1934 Act.   The Individual Defendants had the power and influence and exercised the same to cause Pharmos to engage in the illegal conduct and practices complained of herein by causing the Company to disseminate the false and misleading information referred to above.   Moreover, The Individual Defendants owned or controlled substantial amounts of the Company's stock.

54.     The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from plaintiffs and the Class.

55.     By virtue of the conduct alleged in Count I, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to plaintiffs and the Class for damages suffered.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs demand judgment:

1.     Determining that the instant action is a proper class action maintainable under Rule 23 of the Federal Rules of Civil Procedure;

2.     Awarding compensatory damages and/or rescission as appropriate against defendants, in favor of plaintiffs and all members of the Class for damages sustained as a result of defendants' wrongdoing;

3.     Awarding plaintiffs and the Class the costs and disbursements of this suit, including reasonable attorneys', accountants' and experts' fees; and

4.     Awarding such other and further relief as the Court may deem just and proper.

Dated: January 9, 2005

KIRBY MCINERNEY & SQUIRE, LLP

By:     _Pamila E Kulsrud_
          Pamela E. Kulsrud (PK 4310)
          Ira M. Press
830 Third Avenue, 10th Floor
New York, New York  10022
Tel:  (212) 371-6600
Fax: (212) 751-2540

Jacob Greenwald
SCHOR, GREENWALD & LEVY
4 Taas St. (145 Bialik St.)
Ramat-Gan 52512
Tel:  972-3-6136633
Fax:  972-3-6136644

14

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

SHLOMI COHEN ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the attached complaint against PHARMOS CORP., and has authorized its filing.  Plaintiff retains Kirby McInerney & Squire, LLP and Schor, Greeenwald & Levy and any other law firms that they choose to associate with to pursue such action on a contingent fee basis.

2.  Plaintiff did not purchase PHARMOS CORP. securities at the direction of plaintiff's counsel or in order to participate in this private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff's transactions in PHARMOS CORP. securities during the class period set forth in the complaint are set forth below on the attached Schedule A.

5.  During the three years prior to the date of this certification, plaintiff has not served or sought to serve as a representative party for a class in any action filed under the federal securities laws.

6.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the plaintiff's pro rata share of any class recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 1 day of JANUARY, 2005.

(date)     (month)

By:_____
                    (signature)

## SCHEDULE A

TRANSACTIONS OF PLAINTIFF IN PHARMOS CORP.

| Date | Purchased/Sold | Number of Shares | Price Per Share |
|------|----------------|------------------|-----------------|
| 09 SEP. 04 | P | 1500 | 3.189 |
| 10 SEP. 04 | P | 2000 | 3.134 |
| 13 SEP. 04 | (S) | 2000 | 3.22 |
| 16 SEP. 04 | P | 1000 | 3.119 |
| 20 SEP. 04 | P | 1000 | 3.12 |
| 21 SEP. 04 | P | 1000 | 3.20 |
| 22 SEP. 04 | P | 1000 | 3.099 |
| 27 SEP. 04 | P | 2000 | 3.07 |
| 28 SEP. 04 | P | 1000 | 3.06 |
| 28 SEP. 04 " | P | 2000 | 2.99 |
| 29. SEP. 04 | P | 2000 | 2.72 |
| 20 DEC. 04 | (S) | 12,000 | 1.134 |

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

ISRAEL MANELA ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.   Plaintiff has reviewed the attached complaint against PHARMOS CORP., and has authorized its filing.  Plaintiff retains Kirby McInerney & Squire, LLP and Schor, Greenwald & Levy and any other law firms that they choose to associate with to pursue such action on a contingent fee basis.

2.   Plaintiff did not purchase PHARMOS CORP. securities at the direction of plaintiff's counsel or in order to participate in this private action.

3.   Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.   Plaintiff's transactions in PHARMOS CORP. securities during the class period set forth in the complaint are set forth below on the attached Schedule A.

5.   During the three years prior to the date of this certification, plaintiff has not served or sought to serve as a representative party for a class in any action filed under the federal securities laws, except as listed below:

_____

_____

6.   Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the plaintiff's pro rata share of any class recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 12 day of January, 2005.

By: _____

Israel Manela

<u>SCHEDULE A</u>

TRANSACTIONS OF PLAINTIFF IN PHARMOS CORP.

| | Date | Purchased/Sold | Number of Shares | Price Per Share |
|---|---|---|---|---|
| Open Balance | 30/7/04 | +25000 PARS. SH' | | |
| 1 | 26/8/04 | SOLD | -2500 | 3.03 $ |
| 2 | 1/9/04 | SOLD | -1900 | 3.29 $ |
| 3 | 8/10/04 | BUY | +300 | 2.56 $ |
| 4 | 8/10/04 | " | +300 | 2.58 $ |
| 5 | 8/10/04 | " | +400 | 2.58 $ |
| 6 | 11/10/04 | " | +1100 | 2.70 $ |
| 7 | 11/10/04 | " | +300 | 2.6999 $ |
| 8 | 11/10/04 | " | +1600 | 2.68 $ |
| 9 | 11/10/04 | " | +1500 | 2.62 $ |
| 10 | 11/10/04 | " | +2000 | 2.60 $ |
| 11 | 5/11/04 | SOLD | -100 | 3.01 " |
| 12 | 5/11/04 | " | -100 | 2.99 " |
| 13 | 8/11/04 | " | -300 | 3.24 " |
| 14 | 8/11/04 | " | -200 | 3.23 " |
| 15 | 8/11/04 | " | -200 | 3.21 " |
| 16 | 8/11/04 | " | -100 | 3.16 " |
| 17 | 8/11/04 | " | -100 | 3.13 " |
| 18 | 8/11/04 | " | -100 | 3.12 " |
| 19 | 8/11/04 | " | -100 | 3.11 " |
| 20 | 9/11/04 | " | -2000 | 3.49 " |
| 21 | 15/11/04 | " | -400 | 3.94 " |
| 22 | 3/12/04 | " | -100 | 3.29 " |
| 23 | 8/12/04 | " | -1500 | 3.57 " |
| 24 | 8/12/04 | " | -1000 | 3.57 " |
| 25 | 8/12/04 | " | -2000 | 3.53 " |
| 26 | 14/12/04 | " | -200 | 3.84 " |
| 27 | 14/12/04 | SOLD | 200 | 3.84 " |

Rest of PARS sh as of 10/1/05  +19,600 !!

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

_ELI  MORE_  ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the attached complaint against PHARMOS CORP., and has authorized its filing.  Plaintiff retains Kirby McInerney & Squire, LLP and Schor, Greenwald & Levy and any other law firms that they choose to associate with to pursue such action on a contingent fee basis.

2.  Plaintiff did not purchase PHARMOS CORP. securities at the direction of plaintiff's counsel or in order to participate in this private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff's transactions in PHARMOS CORP. securities during the class period set forth in the complaint are set forth below on the attached Schedule A.

5.  During the three years prior to the date of this certification, plaintiff has not served or sought to serve as a representative party for a class in any action filed under the federal securities laws except as listed below:

_____

_____

6.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the plaintiff's pro rata share of any class recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this _11_ day of _JANUARY_, 2005.
(date)        (month)

By: _____
(signature)

## SCHEDULE A

### TRANSACTIONS OF PLAINTIFF IN PHARMOS CORP.

| Date | Purchased/Sold | Number of Shares | Price Per Share |
|------|---------------|------------------|-----------------|
| 5/12/04 | Buy | 1000 | 3.56 |
| 5/18/04 | Buy | 1000 | 3.40 |
| 10/11/04 | Buy | 2000 | 2.69 |
| 10/11/04 | Buy | 1000 | 2.69 |
| 11/10/04 | Buy | 2000 | 3.56 |
| 11/15/04 | Buy | 3000 | 3.73 |
| 12/20/04 | E.H. SELL | 2000 | 1.00 |
| 12/20/04 | E.H. SELL | 2000 | 0.98 |
| 12/20/04 | E.H. SELL | 2000 | 0.93 |
| 12/20/04 | E.H. SELL | 2000 | 0.94 |
| 12/20/04 | E.H. SELL | 2000 | 1.02 |