Seeger Weiss LLP
550 Broad Street, Suite 920
Newark, New Jersey 07102
(973) 639-9100
**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE PHARMOS SECURITIES LITIGATION, ) ) ) | Civil Action No. 05-338 (KSH) |
| SERLE, ) ) | Civil Action No. 05-862(KSH) |
| Plaintiffs, ) ) | **AMENDED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. ) ) | |
| PHARMOS CORP., ) ) | |
| Defendants. ) ) | **JURY TRIAL DEMANDED** |

Plaintiff, Jeffrey Serle ("Plaintiff"), on behalf of Nominal Defendant, Pharmos Corporation ("Pharmos" or the "Company"), by his attorney, submits this Derivative Complaint (the "Complaint") against the Defendants named herein.

### SUMMARY OF ACTION

1.      This is a shareholder derivative action brought in the right and for the benefit of Nominal Defendant Pharmos against Haim Aviv ("Aviv"), Gad Riesenfeld ("Riesenfeld"), Mony Ben Dor ("Ben Dor"), Elkan R. Gamzu ("Gamzu") and Lawrence F. Marshall ("Marshall") for their breaches of fiduciary duty, abuse of control, insider trading and

1

other violations of law from September 30, 2003 through December 17, 2004 (the "Relevant Period").[1]

2.     Pharmos is a bio-pharmaceutical company that develops drugs to treat a range of neuro-inflammatory disorders. Pharmos' main product, Dexanabinol, is a synthetic nonpsychotropic cannabinoid for the treatment of Traumatic Brain Injury ("TBI").

3.     TBI is a leading cause of death and disability in the young adult population, due primarily to automobile accidents, and in the elderly due to falls.  According to the CDC, annually within the U.S. there are about 1.5 million head injuries which lead to roughly a quarter million hospital admissions, a number 20 times greater than hospitalizations due to spinal cord injury. TBI is the cause of nearly 52,000 deaths and approximately 80,000 cases of severe long-term disability each year. About 2% of the U.S. population is living with disabilities resulting from TBI which leads to an annual societal burden of over $50 billion.

4.     Throughout the Class Period, Defendants repeatedly touted the benefits of Dexanabinol in the treatment of TBI, causing Pharmos' stock price to climb dramatically. In fact, Dexanabinol was simply ineffective in treating TBI, and Defendants were aware of or recklessly disregarded evidence of that ineffectiveness.

5.     Defendants took advantage of the inflated stock price to sell millions of dollars of Pharmos stock to investors and during the August 2004 private placement.

6.     Moreover, between November 15, 2004 and December 1, 2004, more than six months after enrollment in Phase III trials was completed, Defendants Aviv, Riesenfeld,

---

[1] It is important to note that the Relevant Period referenced above relates to the failure to adequately disclose information.  However, the breaches of fiduciary duty by the officers and directors of Pharmos continue through this day.

Ben Dor, Gamzu and Marshall together sold more than 470,000 shares of Pharmos for proceeds of more than $1.89 million.

7.      On the morning of December 20, 2004, Defendants issued a press release announcing results from its pivotal Phase III trial of Dexanabinol for Severe Traumatic Brain Injury. According to the announcement, Dexanabinol did not show a neuroprotective effect in a comprehensive study of 861 patients that had begun more than a year earlier.

8.      In reaction to the news on December 20, 2004, shares of Pharmos fell from $3.50 to $1.18 (a 66% decline). Analysts at Harris Nesbitt, Ferris Baker Watts, Rodeman & Renshaw and RBC Capital all reduced their investment ratings for Pharmos.  Through their timely-placed sales, Defendants obtained more than $1.89 million in proceeds that they would not have obtained had they waited until after the December 20 announcement to sell.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (2002) and supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) (2002).

10.     This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

11.     Venue is proper in this District because many of the acts complained of, including the dissemination of materially false and misleading statements and reports prepared by or with the participation, acquiescence, encouragement, cooperation, or assistance of defendants, occurred, at least in part, in this District.  Additionally, upon information and belief, and Pharmos maintains its registered agent within this District.

## THE PARTIES

12.     Plaintiff is a resident of New York.  He is currently, and was at all relevant times, a shareholder of Pharmos.  Plaintiff's Verification is attached hereto.

13.     Nominal Defendant Pharmos is incorporated in Nevada and headquartered in Iselin, New Jersey, with common stock trading on the Nasdaq under the ticker symbol "PARS".

14.     Defendant Aviv is a resident of Israel.   At all relevant times. He was the Chairman, Chief Executive Officer as well as the Chief Scientist of Pharmos.

15.     Defendant Riesenfeld is a resident of Israel.  At all relevant times, he was the President/COO of Pharmos.

16.     Defendant Ben Dor is a resident of Israel.  At all relevant times he was a member of the Board of Directors of Pharmos.

17.     Defendant Gamzu is a resident of the State of New Jersey.  At all relevant times he was a member of the Board of Directors of Pharmos.

18.     Defendant Marshall is a resident of the State of California.  At all relevant times he was a member of the Board of Directors of Pharmos.

19.     Defendants Aviv, Riesenfeld, Ben Dor, Gamzu, and Marshall are hereinafter collectively referred to as the "Individual Defendants."

20.     By virtue of their positions with the Company as senior officers and executives, the Individual Defendants had the authority and ability to and, in fact did, control the contents of the Company's annual and quarterly reports filed with the SEC and the contents of the Company's press releases. Further, the Individual Defendants' actions during the Class Period caused the material misstatement of the Company's business

operations as alleged herein. The Individual Defendants were aware of the contents of the Company's publicly disseminated reports and press releases alleged herein to be misleading prior to their issuance and had the ability and opportunity to prevent their issuance, but failed to do so.

## SUBSTANTIVE ALLEGATIONS

21.    Dexanabinol is a. non-psychotropic cannabinoid NMDA receptor antagonist under development by Pharmos for the potential treatment of cerebral ischemia, glaucoma, Alzheimer's disease, cardiac failure, head injury and multiple sclerosis. Dexanabinol was licensed to Pharmos for development from its originator, the Hebrew University of Jerusalem.

22.    On September 30, 2003, the directors and officers of Pharmos directed the company to issue a press release touting the recent "fast track" designation for the Phase III trials of dexanabinol as a treatment for traumatic brain injury.  The following language concerning the recently completed Phase II study was contained within the press release: "In the Phase II clinical program, dexanabinol demonstrated an improvement in post-injury orientation and memory and a trend toward efficacy in the primary neurological outcome."

23.    On March 16, 2004, shares of Pharmos rose as much as 6.5% after the Company said it completed patient enrollment for Phase III clinical trials of Dexanabinol. The day before the price reaction, the Company said in a PRNewswire statement:

> The clock is starting to tick to six months follow-up and then it will take two or three months to organize the data and know if we have a clinical effect . . . By the end of the year we expect to have the results.

24.    On April 1, 2004, Pharmos issued a press release announcing that it had been awarded a grant of up to US $1.3 million by the Office of the Chief Scientist of Israel's

Ministry of Industry and Trade to help fund the Company's development of Dexanabinol.

In this press release, Defendant Aviv was quotes as follows:

> We are pleased to be awarded this and previous funding from the Office of the Chief Scientist... The grant, which is in line with our expectations, is important confirmation of our work with dexanabinol.

25.    On August 12, 2004, Pharmos issued a press release, stating the following:

> Pharmos Corporation today announced the U. S. Food and Drug Administration granted orphan drug designation to the Company's lead product candidate, dexanabinol, a neuroprotective agent that the Company is developing to treat severe traumatic brain injury. Dexanabinol is currently being tested in a pivotal Phase III trial for this indication. Results of the trial, which completed enrollment in March 2004, are expected to be announced at the end of this year.

> "We are pleased to be awarded orphan designation for dexanabinol to treat this serious condition for which there is no FDA-approved product," said Haim Aviv. "In addition to benefiting the regulatory submission process, orphan designation provides market exclusivity that adds one more layer of protection beyond our robust intellectual property position for dexanabinol in the treatment of severe TBI."

26.    On August 23, 2004, the Company issued a press release regarding its stock offering:

> Pharmos Corporation announced today that it has raised $16.75 million gross proceeds in an issuance of common stock with several institutional investors. The proceeds will be used for general corporate purposes.

> Haim Aviv said "This financing will allow us to more aggressively pursue our promising CB2 platform while maintaining focus on our top investment priority, Dexanabinol for Traumatic Brain Injury. We see this opportunity in the market as a means to solidify our cash reserves for growth and success."

27.    On October 26, 2004, after the completion of the Phase III trial for TBI and after the completion of the six month "follow up" period, Pharmos held a conference at the Waldorf Astoria in New York for analysts and large investors. At the conference, Aviv provided an update on the Company's business and product pipeline. In a power-point

presentation, Aviv hyped the investment potential of Pharmos related to the Phase III for TBI, stating:

      a.  Worldwide potential market exceeds $1 billion.

      b.  Potentially the first FDA approved product.

      c.  Pharmos possesses worldwide product rights for Dexanabinol.

28.    At the conference, Aviv was asked how many shares were held by Pharmos management. His response was "too little." As investors would learn later, Aviv and Riesenfeld were actually poised to unload millions of dollars of Pharmos shares in advance of the announcement of Phase III results.

29.    On November 22, 2004, Pharmos announced results of its Phase II Clinical Trial of Cognitive impairment in Coronary Artery Bypass Graft Patients. Haim Aviv said:

> "The results are encouraging, and we are pleased that the trial provides supportive evidence of the neuroprotective effect of dexanabinol in the human brain." While post-surgical cognitive impairment and traumatic brain injury ("TBI") are significant different indications, and may not extrapolate results from this trial to predict the outcome of Pharmos' pivotal Phase III trial in severe TBI, the pathology of the two indications involves neuroinflammation and other cytotoxic processes in the brain.

30.    In late November and early December 2004, shortly prior to the announcements of the Phase III trial results but after the completion of the six month "follow up" period, and long after completion of the Phase III enrollment, both Aviv and Riesenfeld sold shares of Pharmos. Aviv sold approximately 20% of his holdings (214,991 shares); and Gad Riesenfeld sold almost 50% of his holdings (205,138 shares), all at around $4 per share for total proceeds in excess of approximately $1.6 million.   Additionally, Defendant Ben Dor exercised 28,750 shares in stock options and then sold all of his holdings, for proceeds of $115,000.  Defendant Marshall also exercised and sold 10,000

shares in stock options, for proceeds of $40,058.  Finally, Defendant Gamzu exercised and sold 11,250 shares in stock options, for proceeds of $43,781.

31.     In its 8-K filed on the December 20, 2004, Pharmos announced the "top line results of its pivotal Phase III trial of dexanabinol to treat severe traumatic brain injury (TBI). Dexanabinol did not demonstrate efficacy as measured by the primary clinical outcome endpoint."

32.     On December 20, 2004, during the announcement of the Phase III results, Pharmos' Chief Financial Officer Alen Michal said "We won't be making any additional investments in TBI." Pharmos spokeswoman Gale Smith said "This was our leading program, and it's very unlikely that we'll continue with dexanabinol for traumatic brain injury."

33.     In reaction to this news, shares of Pharmos plummeted 66% from $3.50 to $1.18 per share.

### Analyst Reactions, Reports and Analysis to Defendants' December 20 Announcement

34.     In the wake of the December 20 Phase III trial announcement, analysts at RBC Capital Markets, Ferris Baker Watts and Rodman & Renshaw all reduced their investment ratings for Pharmos to the equivalent of "underperform" or "sell".

35.     Ferris Baker Watts analyst Michael Zasloff, in his December 20, 2004 report titled Pharmos Corp. Announces That Its Lead Drug Dexanabinol Failed to Exhibit Efficacy in a Pivotal Phase III Trial for Traumatic Brain Injury- Downgrade to Sell"- stated:

> Pharmos reported the results of a Phase III study evaluating the efficacy of dexanabinol in traumatic brain injury. The study, involving over 800 patients, failed to provide evidence that dexanabinol was of benefit in preserving brain function following traumatic brain injury.

> We remain perplexed over the failure of this trial in light of prior clinical studies...

36.     Rodman & Renshaw analysts Elemer Pinta and Swayampakula Ramakanth, in their December 20, 2004 report titled "Dexanabinol Is No Match for TBI: Downgrading to Market Underperform/Speculative Risk" stated:

> Fought an uphill battle, but today, Pharmos reported negative Phase III trial results with dexanabinol for the treatment of severe traumatic brain injury (TBI). Recently, the same drug provided only partial benefit for patients with cognitive impairment (CI) following cardiac surgery. While Pharmos continues to develop dexanabinol for CI, we are unable to assign tangible value for the compound.... Therefore, we are downgrading Pharmos to Market Underperform/Speculative Risk and place our target price under review.

37.     In RBC Capital Markets' research report, analyst David Bouchey lowered Pharmos' rating to Sector Perform from Outperform because of Dexanabinol's Phase III failure:

> The Dexanabinol Phase III showed no evidence of efficacy over-all or in any sub-group tested for the primary endpoint, improvement in outcomes as measured by the extended Glasgow Outcome Scale. Neither was there evidence for a mortality benefit. It is still possible the company could demonstrate an improvement in control of Intracranial Pressure (ICP). . . . However, it is likely that control of ICP is not an FDA approvable endpoint by itself.

38.     As previously alleged, Individual Defendants Aviv and Riesenfeld sold 420,1239 shares of Pharmos at artificially inflated prices for proceeds in excess of $1.68 million. Haim Aviv sold 20% of his holdings and Riesenfeld sold 50% of his holdings.  Had they waited until after the December 20, 2004 announcement to sell their shares, Aviv and Riesenfeld would have received approximately $500,000, instead of $1.68 million, or over $1.1 million less.

39.     The hype and positive comments on Dexanabinol also enabled the Defendants to raise millions of dollars through a private placement in August 2004.

## DEMAND EXCUSED ALLEGATIONS

40.     Pharmos' Board of Directors is currently composed of seven (7) directors – Haim Aviv, David Schlachet, Mony Ben Dor, Georges Anthony Marcel, Elkan R. Gamzu, Lawrence F. Marshall and Abraham Sartani, M.D.  Each of these Directors, except for David Schlachet, Georges Anthony Marcel and Abraham Sartani are named as Defendants herein.

41.     Defendant Aviv has served as Pharmos' Chairman, CEO, Chief Scientist and a member of the Board of Directors since the Company's inception.  Aviv, as a director, owed a duty to Pharmos and its shareholders to be reasonably informed about the business and operations of the Company.  As CEO, Chief Scientist and Chairman of the Board, Aviv also assumed important managerial responsibilities which required him to be well informed about the day-to-day operations of the Company.  However, Aviv breached these duties by actively participating in, encouraging, sponsoring, and/or approving many of the wrongful acts or omissions complained of herein and/or purposefully or recklessly disregarding these wrongful acts or omissions.   Further, Aviv is a co-founder of Pharmos.  He was also a professor of molecular biology at the Weitzman Institution of Science until 1993, and is currently a member of the Board of Directors of Yeda, Ltd. at the Weitzman Institute.  On two days in July 2004, Aviv sold approximately 276,153 shares with gross proceeds of $1,069, 313.40.  In November and December 2004, Aviv engaged in massive insider trading, selling approximately 20% of his holdings (214,991 shares); for proceeds of approximately $885,000.  In December 2001, the Company's Pharmos Ltd. subsidiary renewed a License

Agreement with Herbamed, Ltd., a company controlled by Aviv, which licenses to Herbamed the Company's patent rights for oral delivery of lipophilic substances in the limited field of neutraceuticals.   Pursuant to Nasdaq listing requirements, Aviv is considered an insider and is therefore not independent.

42.     Defendant Ben Dor has served on Pharmos' Board of Directors since March 2003.   Ben Dor, as a director, owed a duty to Pharmos and its shareholders to be reasonably informed about the business and operations of the Company.   Instead, Ben Dor breached these duties by actively participating in, encouraging, sponsoring, and/or approving many of the wrongful acts or omissions complained of herein and/or purposefully or recklessly disregarding these wrongful acts or omissions.   Ben Dor has also been a managing partner of Biocom, a venture capital fund in the field of life science since April 2000.   Director David Schlachet is also a managing partner of Biocom.   Ben Dor is also Vice President of Business Development for Clal Industries Limited, one of the leading investment groups in Israel while fellow Defendant Gamzu who serves on the Board of Directors of Clal Biotechnology Industries, Ltd.   In November and December 2004, Ben Dor engaged in insider trading, exercising and selling 28,750 shares in stock options, for proceeds of approximately $115,000.   At all times during this process, Ben Door served on the Compensation and Stock Option Committee.

43.     Defendant Gamzu has served on Pharmos' Board of Directors since February 2000.   Gamzu, as a director, owed a duty to Pharmos and its shareholders to be reasonably informed about the business and operations of the Company.   Instead, Gamzu breached these duties by actively participating in, encouraging, sponsoring,

and/or approving many of the wrongful acts or omissions complained of herein and/or purposefully or recklessly disregarding these wrongful acts or omissions.  Gamzu is on the Board of Directors of Clal Biotechnology Industries, Ltd. while Defendant Ben Dor serves as Vice President of Business Development of Clal Industries Limited, and represents Clal Industries in all of the acquired companies.   Clal Biotechnology Industries, ltd. Is 100% owned by Clal Industries.  In November and December 2004, Gamzu engaged in insider trading, exercising and selling 11,250 shares in stock options, for proceeds of $43,781.   In 2000, the Company entered into a consulting agreement with Gamzu, which expired in January 2003.   Pursuant to the consulting agreement, Gamzu provided certain assistance "consulting services to the Company as and when needed."  Gamzu was compensated at a rate of $3,000 per day.  Between April 2004 and November 2004, Gamzu engaged in insider and suspect trading patterns that resulted in net proceeds of $72,199.  Mr. Gamzu serves on the Compensation and Stock Option Committee of the board

44.    Defendant Marshall has served on Pharmos' Board of Directors since June 2002.  Marshall, as a director, owed a duty to Pharmos and its shareholders to be reasonably informed about the business and operations of the Company.   Instead, Marshall breached these duties by actively participating in, encouraging, sponsoring, and/or approving many of the wrongful acts or omissions complained of herein and/or purposefully or recklessly disregarding these wrongful acts or omissions.  Marshall's medical research covers a wide range of issues related to TBI and other conditions of the brain.   In November and December 2004, Marshall engaged in insider trading,

exercising and selling 10,000 shares in stock options, for proceeds of $40,058.   Mr. Marshall serves on the Compensation and Stock Option Committee of the board.

45.     David Schlachet has been a member of Pharmos' Board of Directors since October 1994.   Schlachet was Vice President of Finance and Administration at the Weizmann Institute of Science.  He was also President and CEO of Yeda Research and Development Co., Ltd., a marketing and licensing company at the Weizmann Institute. Coincidentally, Defendant Aviv was a professor at the Weizmann Institute and is a member of the Board of Directors of Yeda Ltd.  Schlachet is also a managing partner of Biocom, a position shared with Defendant Ben Dor.

46.     George Anthony Marcel has served on Pharmos' Board of Directors since June 2002.   In 1998, the Company entered into a consulting agreement with Marcel, which expired in April 2003.   Pursuant to the consulting agreement, Dr. Marcel provided certain assistance and consulting services to the Company as and when needed.

47.     In addition to the interrelationships among the Individual Defendants through both their personal and professional lives, and their self-dealing from which they personally benefited, demand on the Pharmos Board of Directors to institute this action is not necessary because such a demand would be a futile and useless act, particularly for the additional following reasons:

        a. A majority of the directors of Pharmos, as detailed herein, participated in, approved and permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Pharmos stockholders and are, therefore, not disinterested parties and many are the principal beneficiaries of the wrongdoing alleged herein, and thus

could not fairly and fully prosecute such a suit even if such suit was instituted by them;

b.  A majority of the directors had a responsibility and obligation to assure that all press releases and filings of SEC reports and registration statements were accurate and that all financial controls and other oversight procedures were in place that would have detected and prevented the false and misleading statements put out by the Company to the public that are further described in this Complaint, however, the Individual Defendants failed to do so, completely abdicating their oversight responsibility to the Company;

c.  In order to bring this suit, a majority of the directors of Pharmos would be forced to sue themselves and/or persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

d.  The acts complained of constitute violations of state law and the fiduciary duties owed by Pharmos' officers and directors and are incapable of ratification;

e.  The actions of the directors has impaired the Board's ability to validly exercise its business judgment and rendered it incapable of reaching an independent decision as to whether to accept Plaintiff's demands;

f.  Any suit by the directors of Pharmos to remedy these wrongs would likely expose the Individual Defendants and Pharmos to further violations of securities laws which would result in additional civil actions being filed

against one or more of the Individual Defendants; thus they are hopelessly conflicted in making any supposedly independent determination as to whether to sue themselves;

g. Pharmos has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein; yet, the Individual Defendants have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct which caused the filing of securities class actions against Pharmos and the initiation of an SEC investigation, nor have they attempted to recover any part of the damages Pharmos suffered and will suffer thereby;

h. If the Individual Defendants were to bring this derivative action against themselves, they would thereby expose their own negligence and misconduct which underlies allegations against the Company contained in the class action complaints for violations of federal securities law.  Such admissions would impair the Company's and their defense of the Class Actions and greatly increase the probability of their personal liability in the Class Actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants;

i. The Individual Defendants are believed to be covered by an insurance policy which covers the type of misconduct alleged herein, which policy would likely preclude coverage, if any, if the Individual Defendants initiated action against any of the other Individual Defendants named herein. Therefore, Pharmos' Board, or any committee thereof, is effectively

disabled from complying with any demand that would cause the Company to bring suit against the Individual Defendants because to do so would result in the loss of their insurance coverage;

j.   The Compensation and Stock Option Committee of the board is charged with reviewing the compensation arrangements for the Company's executive officers, including Mr. Aviv, and for administering the stock options plans, which the board participates in.

48.   Plaintiff has not made any demand on the shareholders of Pharmos to institute this action since such demand would be a futile and useless act for the following reasons:

a.   Pharmos is a publicly traded company with thousands of shareholders;

b.   Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or telephone numbers of shareholders; and

c.   Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could even be individually identified.

49.   Plaintiff will adequately and fairly represent the interests of Pharmos in enforcing and prosecuting its rights.

**CAUSES OF ACTION**

**Count I**
**Against all Individual Defendants for Breach of Fiduciary Duty**

50.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

16

51.     The Individual Defendants owed and owe Pharmos fiduciary obligations.   By reason of their fiduciary relationships, the Individual Defendants owed and owe Pharmos the highest obligation of good faith, fair dealing, loyalty and due care.

52.     The Individual Defendants breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

53.     Each of the Individual Defendants had actual or constructive knowledge that they had caused Pharmos to improperly represent material facts in the press releases, and the other acts complained of herein.   These actions could not have been a good faith exercise of prudent business judgment.

54.     As a direct and proximate result of the Individual Defendants' misconduct, Pharmos has suffered and will continue to suffer significant damages.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

55.     Plaintiff, on behalf of Pharmos, has no adequate remedy at law.

**Count II**
**Against Individual Defendants for Abuse of Control**

56.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as if though fully set forth herein.

57.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Pharmos, for which they are legally responsible.

58.     As a direct and proximate result of the Individual Defendants' abuse of control, Pharmos has sustained significant damages, and Individual Defendants are liable to the Company.

59.     Plaintiff, on behalf of Pharmos, has no adequate remedy at law.

**Count III**
**Against Individual Defendants for Contribution and Indemnification**

60.     Plaintiff repeats and realleges each and every allegation set forth above.

61.     Pharmos is alleged to be liable to various persons, entities and/or classes by virtue of the same facts or circumstances as are alleged herein to give rise to Individual Defendants' liability to Pharmos.

62.     Pharmos' alleged liability on account of the wrongful acts and practices and related misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Individual Defendants as alleged above, and Pharmos is entitled to contribution and indemnification from each of the Individual Defendants in connection with all such claims that have been, are or may in the future be asserted against Pharmos by virtue of the Individual Defendants' misconduct.

**Count IV**
**Against Individual Defendants for Breach of Fiduciary Duties for**
**Insider Selling and Misappropriation of Information**

63.     Plaintiff repeats and realleges each and every allegation set forth above.

64.     At the time of the stock sales set forth herein, the Individual Defendants knew the information described above, and sold Pharmos common stock on the basis of such information.

65.     The information described above was proprietary, non-public information concerning the Company's financial condition and future business prospects.

66.     At the time of the stock sales, the Individual Defendants knew that Dexanabinol was not effective in the treatment of TBI.

67.     The Company is entitled to the imposition of a constructive trust on any profits the Individual Defendants obtained thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.  Against all of the Individual Defendants for the damages sustained by Pharmos as a result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.  Equitable and/or injunctive relief as permitted by law;

C.  Restitution and disgorgement of profits;

D.  Attorneys fees and Costs

E.  Any such other and further relief as may be just and proper under the circumstances.

Plaintiff demands a trial by jury.

Dated: September 6, 2005

SEEGER WEISS LLP

By: /s/ Christopher A. Seeger
Christopher A. Seeger
David R. Buchanan
550 Broad Street, Suite 920
Newark, New Jersey  07102
Tel:  (973) 639-9100
Fax:  (973) 639-9393

William B. Federman
FEDERMAN & SHERWOOD
120 N. Robinson Avenue, Suite 2720
Oklahoma City, OK 73102

Tel: (405) 235-1560
Fax: (405) 239-2112

**Attorneys for Plaintiff**

**<u>VERIFICATION</u>**

I, CHRISTOPHER A. SEEGER declare that I have reviewed the Amended Shareholder Derivative Complaint ("Complaint") prepared on behalf of Pharmos Corp., and to believe those allegations to be true.  I further declare that Plaintiff, Jeffrey Serle ("Plaintiff"), is a current shareholder, and has been a holder, of Pharmos Corp. common stock during the time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.  Plaintiff resides in a county outside of the county of our offices, and will submit a Verification under separate cover.

Dated: September 6, 2005                                    <u>/s/ Christopher A. Seeger</u>